UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:

DENNIS MIHALATOS,

                              Debtor.
---------------------------------------------------------------x
JACOB AGAI, 291 AVENUE P, LLC, and
SUMMERFIELD DEVELOPERS, INC.,

                              Plaintiffs,

vs.

DENNIS MIHALATOS,

                              Defendant.
---------------------------------------------------------------x

Case No. 8-13-70900-reg

Chapter 7

Adv. Proc. No. 8-13-08088-reg

**MEMORANDUM DECISION**

Before the Court is a motion for summary judgment by the Plaintiffs, Jacob Agai, 291

Avenue P, LLC and Summerfield Developers, Inc. (collectively, the "Plaintiffs" or "Agai"),

seeking judgment as a matter of law that the Debtor, Dennis Mihalatos ("Debtor" or

"Mihalatos"), should be denied his discharge pursuant to 11 U.S.C. §§ 727(a)(3), (a)(4)(A) and

(a)(5) of the Bankruptcy Code.[1]  Much of the complaint alleges record-keeping, disclosure and

accountability failures by the Debtor with respect to an entity, Diontech Consulting, Inc., and

relies on the conflation of the Debtor and Diontech as one and the same entity to hold the Debtor

responsible under § 727(a) for these failures as to Diontech.  The Plaintiffs' reliance is based

upon a state court decision and order which pierced the corporate veil as to the Debtor and his

Diontech partners to enforce a pre-petition judgment pursuant to N.Y. C.P.L.R. Article 52.  The

---

[1]    All statutory citations are to Title 11, United States Code, unless otherwise indicated.

Plaintiffs ask this Court to equate this "piercing" finding with an "alter ego" finding and treat this as *res judicata* on the issue of the Debtor's status as the alter ego of Diontech. The Court is not prepared to do so. Although in New York, the concepts of piercing the corporate veil and a finding of alter ego have routinely been equated, possibly because under some recitations of the standard an "alter ego" finding is subsumed in a "piercing" finding, they are not necessarily the same and do not necessarily have the same consequences. The case presented now highlights an important distinction between the two concepts and the consequences that flow from each finding: piercing the corporate veil imposes vicarious liability upon an individual for a corporation's debts, while an alter ego finding would make the individual directly liable for the corporate debt by conflating the identities of the two. *See MWH Int'l, Inc. v. Inversora Murten, S.A.*, No. 1:11-cv-2444-GHW, 2015 WL 729097 (S.D.N.Y. Feb. 11, 2015). The former would impose liability on the principal while in the context of a bankruptcy the latter would, in addition to broadening the reach of the § 362(a) automatic stay, impose additional disclosure and accountability requirements with respect to the now non-existent corporation, beyond just monetary liability. The distinction is critical in this § 727(a) case, and the Court is not prepared to find on summary judgment that the state court clearly made the required "alter ego" finding or that it was implicit in its holding.

With respect to the remainder of the Plaintiffs' arguments in favor of denial of the discharge, the Court finds that there are material facts in dispute which preclude summary judgment. While the Court finds the allegations of the complaint to be compelling and if proven at trial would tend to warrant denial of the discharge, the Court is unable to find as a matter of law that the Plaintiffs are entitled to the relief sought. For these reasons and as more fully stated below, the Plaintiffs' summary judgment motion is denied.

2

**Procedural History**

On February 25, 2013 (the "Petition Date"), the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code, and Kenneth Kirschenbaum, Esq. ("Trustee") was subsequently appointed as trustee. On June 3, 2013, the Plaintiffs filed the instant complaint seeking to deny the Debtor's discharge in its entirety and/or seeking to except the Plaintiffs' debt from discharge under §§ 523(a)(2), (4) and (6).  The Debtor filed an answer on July 5, 2013, and an amended answer August 8, 2013.  On December 9, 2013, Plaintiffs filed a Memorandum in Support of Motion for Leave to Amend the Complaint to add a claim under § 727(a)(2)(A), and for Summary Judgment on Plaintiffs' § 727 Claims as to Counts One (§ 727(a)(3)), Two (§ 727(a)(4)(A)) and Three (§ 727(a)(5)). The Debtor filed opposition to the motion on April 16, 2014, and the Plaintiffs filed a reply on April 18, 2014.  On April 21, 2014, the Court granted the Plaintiffs' Motion for Leave to Amend the Complaint, and Plaintiffs filed an amended complaint on May 29, 2014, alleging an additional cause of action under § 727(a)(2).  A hearing on the Plaintiffs' Motion was held June 2, 2014, at which time this matter was taken under submission.

**Facts**

From about 1999 to 2008, the Debtor was a one-third owner of a construction company called Diontech Consulting, Inc. ("Diontech") (Am. Schedule B, 13-70900-REG, ECF. No. 20); (Def's  Mem. of Law in Opp'n, 13-08088-REG, ECF. No. 23 at 2); (Pls' EDNY Local Bankr. Rule 7056.1 Statement of Undisputed Material Facts, 13-08088-REG, ECF. No. 18 ¶ 18.) The other two owners of Diontech were Sokratis Antoniou ("Sokratis") and Stylianos Antoniou

3

("Stylianos"), both of whom are debtors before this Court.[2]  In 2007, the Plaintiffs sued Diontech

and Mihalatos (but not Sokratis or Stylianos) alleging that they suffered damages as a result of

Diontech's breach of two construction contracts. (Compl., 13-08088-REG, ECF No. 1 ¶ 1.) On

September 19, 2011, after a trial in the Supreme Court of the State of New York, County of

Richmond, Justice Dollard issued a decision and awarded the Plaintiffs judgments totaling

approximately $5.8 million against Diontech and Mihalatos. (Decl. of Michael Paul Bowen, Ex.

6, 13-08088-REG, ECF No. 19-8.) Plaintiffs subsequently commenced post-judgment

proceedings pursuant to Article 52 of the New York Civil Practice Law and Rules to, *inter alia*,

pierce the corporate veil of Diontech and hold the Debtor personally liable, jointly and severally

with the other principals.  (Plaintiffs' Mot. for Leave to Amend the Compl. and Summ. J., 13-

08088-REG, ECF No. 17 at 6.).  The bankruptcy filings by the Debtor, Stylianos and Socrates

stayed the Plaintiffs' enforcement actions, and so on March 4, 2013, Plaintiffs sought relief from

the automatic stay to pursue the Article 52 proceeding. (Mot. for Relief from Stay, 13-70900-

REG, ECF No. 11).  The stay was lifted March 22, 2013. (Order Granting Mot. For Relief From

Stay, 13-70900-REG, ECF No. 23.)  On August 19, 2013, the state court entered a decision and

order piercing the corporate veil ("Veil Piercing Order").  (Decl. of Michael Paul Bowen, Ex. 7,

13-08088-REG, ECF No. 19-9.)

While the Plaintiffs' lawsuit was pending, around the end of 2008, Diontech ceased doing

business, and the company was dissolved around 2009. (Pls' EDNY Local Bankr. Rule 7056.1

---

[2]      Sokratis, the Debtor's brother in law, filed a chapter 7 petition with this Court on July 31, 2012
(Case No. 12-74788).  Stylianos filed a chapter 7 petition with this Court also on July 31, 2012 (Case No.
12-45622).  The Plaintiffs, also creditors in the related cases, filed similar §727 complaints against both
Sokratis and Stylianos in adversary proceeding numbers 12-8400 and 12-1299, respectively.  On August
14, 2014, Chief Judge Craig issued a Decision and Order granting Plaintiffs' motion for summary
judgment against Stylianos, and denying Stylianos's discharge pursuant to §§ 727(a)(2)(A), (a)(3) and
(a)(4)(A), which Order is now final and non-appealable.  This Court's decision on Plaintiffs' motion for
summary judgment against Sokratis Antoniou will be issued simultaneously with this Memorandum
Decision.

Statement of Undisputed Material Facts, 13-084088-REG, ECF. No. 18 ¶ 21.)  The Diontech

general ledgers for 2007 and 2008 show total cumulative "loans" to the Debtor in the amount of

$140,000.  (Plaintiffs' Mot. for Leave to Amend the Compl. and Summ. J., 12-08088-REG, ECF

No. 17 at 7.)  Diontech's 2008 Tax Returns report total "Loans to shareholders" in an amount of

$1,001,768 at the end of the tax year. (Decl. of Michael Paul Bowen, Ex. 38, Part 1, 13-08088-

REG, ECF No. 19-47 at 4.)  Despite these documents, the Debtor claims that that these transfers

to him were not loans but rather salary payments. (Def's Aff. Regarding Loans to Shareholders,

13-08088-REG, ECF. No. 27 ¶ 12.)  In an affidavit filed with the Court, the Debtor attempts to

explain the transfers and the use of the funds.  (Def's Aff. Regarding Loans to Shareholders, 13-

08088-REG, ECF. No. 27.)

In the latter part of 2008, the Debtor sought the assistance of a company called People's

Management Resources, Inc. ("PMRI") to raise additional capital for a failing Diontech.

According to the Debtor, PMRI represented that it could raise the necessary funds but the funds

would have to be loaned indirectly to Diontech through a new entity funded with new capital

from the principals of Diontech.  To that end, according to the Debtor, he and his partners

created, and contributed capital to, an entity called AVN Enterprises ("AVN").  According to the

Debtor each of he and his partners contributed approximately $44,416.666 to AVN.  (Def's  Aff.

and Counterstatement of Facts, 13-08088-REG, ECF. No. 22 ¶ 18.)  After receiving the

necessary contributions from its principals, AVN received a check from PMRI December 12,

2008, for $500,000, (Def's  Aff. and Counterstatement of Facts, Ex. H, 13-08088-REG, ECF.

No. 22-9.)  According to the Debtor this check was returned for insufficient funds.  At that time,

the Debtor says he and his partners consulted with law enforcement authorities.  In the following

two months, the Debtor wrote two checks from the AVN account, one January 8, 2009, for

5

$25,000 to his wife, Elizabeth Mihalatos, and one February 10, 2009, to himself for $5,000. (Decl. of Michael Paul Bowen, Ex. 24, 13-08088-REG, ECF No. 19-31.)  The Debtor claims that that these were payments made by AVN to recoup the upfront costs that the Debtor and his family allegedly made to AVN in order to receive the loan from PMRI.

The Debtor does not dispute his involvement with AVN.  The Debtor admits that he was a signator on the bank account held by AVN.  (Def's  Aff. and Counterstatement of Facts, 13-08088-REG, ECF. No. 22 at 4.)  In an exhibit provided by the Debtor, his name appears next to AVN in an "Agreement for SBLC."  The document reads: "AVN Enterprises, Inc., Dennis Mihalatos." (Def's  Aff. and Counterstatement of Facts, Ex. G, 13-08088-REG, ECF. No. 22-8.) Despite this, the Debtor maintains that Sokratis Antoniou "was the sole 100% owner" of AVN. (Def's  Aff. and Counterstatement of Facts, 13-08088-REG, ECF. No. 22 ¶ 17.)  The Debtor failed to include his role in AVN in response to Question 18 of the Statement of Financial Affairs which asks the Debtor to list the companies for which he was an "officer, director, partner, or managing executive of a corporation . . . within the last six years."  (*See* Am. Statement of Financial Affairs, 13-70900-REG, ECF. No. 21.)

At the end of 2008, after Diontech ceased operations, the Debtor was employed by Centex Builders, a company owned solely by Diontech's former accountant, Kyriacos Skevas. (Def's  Aff. and Counterstatement of Facts, 13-08088-REG, ECF. No. 22 ¶ 120.)  The Plaintiffs obtained financial records from Centex which show that from March 2011 to May 2011 the Debtor received five payments from Centex totaling $5,837,50[3] which were deposited into the Debtor's wife's Signature Bank account ending in 2118.  In addition to these payments, the

---

[3]        This amount only indicates the payments made within the two years preceding the Debtor's bankruptcy filing. There were additional payments dating back to November 2009.

Debtor admits that Centex paid his wife, Elizabeth Mihalatos, directly for work he did for Centex. (Pls' EDNY Local Bankr. Rule 7056.1 Statement of Undisputed Material Facts, 13-08088-REG, ECF. No. 18 ¶ 13.)

In connection with his bankruptcy case and this adversary proceeding, the Debtor "produced just one banker's box  . . . of documents, including many documents that had previously been obtained by the Agai Creditors pursuant to third-party subpoenas." (Pls' Mot. for Leave to Amend the Compl. and Summ. J., 13-08088-REG, ECF No. 17 at 30.)  In this turnover, the Debtor produced bank statements from two Sovereign Bank accounts, one account ending in 4104 in the name of the Debtor and his spouse, Elizabeth Mihalatos, (Decl. of Michael Paul Bowen, Ex. 34, 13-08088-REG, ECF No. 19-41), and another ending in 2118 solely in the name of the Elizabeth Mihalatos. (Decl. of Michael Paul Bowen, Ex. 35, 13-08088-REG, ECF No. 19-42.)

On March 11, 2013, the Debtor filed his schedules, Statement of Financial Affairs ("SOFA"), and other required filings. On March 12, 2013, he submitted amended filings. All of these filings were made under oath.  He did not disclose his interest in AVN or any Sovereign Bank accounts.

**Legal Analysis**

**Standard for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure states, in pertinent part, that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4]  In ruling

upon a summary judgment motion the Court must determine whether a genuine issue of fact

exists, not resolve disputed issues of fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330

(1986).  "The nonmoving party must show that there is more than a metaphysical doubt

regarding a material fact and may not rely solely on self-serving conclusory statements."

*Rosenman & Colin LLP v. Jarrell* (*In re Jarrell*), 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000)

(citations omitted).  "When viewing the evidence, the court must 'assess the record in the light

most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's]

favor.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citing *Delaware &*

*Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990)), *cert. denied*,

540 U.S. 811 (2003).

**Alter ego finding**

Much of the Plaintiffs' complaint alleges record-keeping, disclosure and accountability

failures by the Debtor with respect Diontech.  The Plaintiffs base these allegations on the Veil

Piercing Order entered in the Article 52 proceedings commenced to enforce the Plaintiffs'

judgment.  Judgment was granted against the Debtor by default in the Article 52 proceedings.

According to the Debtor, he did not raise opposition in those proceedings because he was already

liable for the Diontech judgment and so piercing the veil against him would expose him to no

greater liability than he already had.

In order to find the Debtor liable for his disclosure failures with respect to Diontech in the

context of this § 727 complaint, this Court must find that the Veil Piercing Order rendered

---

[4]      Rule 56 governs the motion for summary judgment in this adversary proceeding by virtue of Fed.
R. Bankr. P. 7056.

Mihalatos the "alter ego" of Diontech.  The Plaintiffs assert that the findings and conclusions made by the state court in the Veil Piercing Order are *res judicata* as to alter ego, and the Debtor should not be permitted to re-litigate this finding.  (Pls' Mot. for Leave to Amend the Compl. and Summ. J., 13-08088-REG, ECF No. 17 at 19–20.)  The Debtor argues that the Veil Piercing Order is not *res judicata* on the issue of alter ego, because no specific findings were made as to him.

Under New York law, *res judicata* may be applied where the claim sought to be precluded was "necessarily decided" by the prior court and the party against whom *res judicata* is being applied had a "full and fair opportunity" to litigate the issue in the prior proceeding. *Nate B. and Francis Spingold Found. v. Halperin* (*In re Halperin*), 215 B.R. 321, 335 (Bankr. E.D.N.Y. 1997) (quoting *Conte v. Justice*, 996 F.2d 1398, 1400 (2d Cir. 1993)).

The Court is not prepared to find that the Veil Piercing Order should be given preclusive effect here on the issue of alter ego.  The Plaintiffs conflate the distinction between veil piercing and an alter ego finding.  However, the effects of the two doctrines are logically and legally distinguishable.  In New York, veil piercing will always require proof of a wrong or fraud as well as an injury.  In and of itself, an alter ego finding confirms not the commission of a wrong or the occurrence of an injury; instead, it formally recognizes what was a preexisting fact: at the time of the relevant transaction, the controlling principal and the corporations were in actuality one and the same person, the former inseparable from the latter and its liability both personal and direct.  Within the context of a bankruptcy and a §727 analysis, as a result of an alter ego finding a debtor's failure to disclose information regarding the assets and transactions of the corporation would simultaneously be a failure to disclose the assets and transactions of a debtor.  *In re Adler*,

9

494 B.R. 43, 61 (Bankr. E.D.N.Y. 2013), *aff'd*, *Ng v. Adler*, 518 B.R. 228 (E.D.N.Y. 2014).  By definition, an alter ego corporation possesses no independent identity or volition.

The Court finds that the Veil Piercing Order did not conclusively render the Debtor to be the alter ego of Diontech.  After reviewing the Veil Piercing Order, this Court finds the state court determined that the corporate veil of Diontech should be pierced to hold the Debtor personally liable for the judgment.  However, the state court did not conclusively determine, nor was the issue clearly raised, that Diontech was the alter ego of the Debtor.  While the state court did find that "Diontech was a sham entity," (Decl. of Michael Paul Bowen, Ex. 7, 13-08088-REG, ECF No. 19-9 at 4), this Court cannot read the state court decision to have found that the Debtor and Diontech to be one and the same, thus imposing upon the Debtor obligations to disclose assets, liabilities, and account for the loss of assets of Diontech's in his individual bankruptcy petition. *See In re Adler*, 494 B.R. 43.  This Court holds the belief that "[a]ny reasonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel." *In re Cohen*, 92 B.R. 54, 70–71 (Bankr. S.D.N.Y. 1988) (quoting B. Russell, *Bankruptcy Evidence Manual* § 4 at 5.)  There is no dispute that the Debtor is personally liable for the debt to the Plaintiffs, but personal liability for a corporation's debt by way of veil piercing does not necessarily mean that the principal is also an alter ego of the corporation thus imputing upon the principal the bankruptcy disclosure failures and deficiencies of the corporation.

The Plaintiffs attempt to draw many parallels to this Court's decision in *In re Adler*, 494 B.R. 43 (Bankr. E.D.N.Y. 2013), *aff'd*, *Ng v. Adler*, 518 B.R. 228 (E.D.N.Y. 2014).  However, in *Adler*, the Court, after trial, issued its own ruling piercing the corporate veil and specifically found the corporations in that case to be the debtor's alter egos.  *In re Adler*, 494 B.R. at 52. Here, no such finding has been made by this Court and an alter ego finding by the state court is

10

not entirely clear.  In order for this Court to give collateral estoppel or *res judicata* effect to a state court finding, such finding must be clear and unequivocal.  *See In re Kuncman (Saratoga CMM, Inc. v. Kuncman)*, 454 B.R. 276, 284 (Bankr. E.D.N.Y. 2011) (finding that the court will not "cobble together" pieces of a state court decision in making collateral estoppel finding).  This is especially so where the consequences to the Debtor, such as denial of the discharge, are so severe.

Here, the Plaintiffs argue that the Debtor's disclosure failures and other acts and omissions with respect to Diontech assets warrants denial of the discharge under various subsections of § 727(a).  Because this Court finds that it will not give *res judicata* effect to the state court decision on the question of alter ego, the Court will examine, at this summary judgment stage, only the Plaintiffs' arguments that relate directly to the Debtor's personal actions and omissions with respect to this bankruptcy filing.  As so limited, the Court finds that there are material facts in dispute that preclude summary judgment.

### 1.  Denial of Discharge under 11 U.S.C. § 727

It is well-settled law that the denial of a debtor's discharge is a drastic remedy that "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'"  *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F .3d 1300, 1310 (2d Cir. 1996) (quoting *Bank of Pa. v. Adlman* (*In re Adlman*), 541 F.2d 999, 1003 (2d. Cir.1976)).  "Due to the total bar on the Debtor's discharge that would occur under § 727, a court must be mindful of the impact of granting summary judgment against the Debtors." *In re Moreo*, No. 07-71258-DTE, 2008 WL 5110967, at *2 (Bankr. E.D.N.Y. Dec. 2, 2008).  However, a discharge under § 727 is a privilege, not a right, and may only be granted to the honest debtor. *Congress Talcott*

*Corp. v. Sicari* (*In re Sicari*), 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994). The plaintiff bears the burden of establishing each of the elements of § 727 by a preponderance of the evidence. *See Minsky v. Silverstein* (*In re Silverstein*), 151 B.R. 657, 660 (Bankr. E.D.N.Y. 1993); *see also* Fed. R. Bankr. P. 4005. Plaintiffs seek denial of Debtor's discharge under §§ 727(a)(3) (failure to keep or preserve books and records), 727(a)(4)(A) (false oath), and 727(a)(5) (failure to explain loss or deficiency of assets).

Although the allegations of the complaint are compelling and if proven at trial would tend to warrant denial of the discharge, the Court finds that there are material facts in dispute which preclude summary judgment on all three claims.

### a.  Count 1—denial of the Debtor's discharge under § 727(a)(3)

Section 727(a)(3) provides that a debtor shall not be granted a discharge if the Debtor has "concealed, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). The Debtor must provide enough information "to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions," as required by § 727(a)(3). *Schackner v. Breslin Realty Dev. Corp.*, No. 11–CV–2734 (JS), 2012 WL 32624, at *4 (E.D.N.Y. Jan. 5, 2012). Lacking an intent element, § 727(a)(3) establishes a two-step, burden-shifting approach that makes adequate record-keeping a predicate for a debtor's discharge. *In re Cacioli*, 463 F.3d 229, 235 (2d Cir. 2006) (citing *White v. Schoenfeld*, 117 F.2d 131, 132 (2d Cir.1941)); *Jacobowitz v. Cadle Co.* (*In re Jacobowitz*), 309 B.R. 429, 436 (S.D.N.Y. 2004).

### i.    Inadequate Records: Plaintiffs' Burden under § 727(a)(3)

First, a plaintiff must prove "that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." *In re Cacioli*, 463 F.3d at 235.  The "adequacy" of a debtor's record-keeping is measured by utilizing eight non-exhaustive factors: (1) whether the debtor was engaged in business, and if so, the complexity and volume of the business; (2) the dollar amount of the debtor's obligations; (3) whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; (4) the debtor's education, business experience, and sophistication; (5) the customary business practices, for record keeping in the debtor's type of business; (6) the degree of accuracy disclosed by the debtor's existing books and records; (7) the extent of any egregious conduct on the debtor's part; and (8) the debtor's courtroom demeanor.  *State Bank of India v. Sethi* (*In re Sethi*), 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000) ("*Sethi*"); *see also In re Cacioli*, 463 F.3d at 236 n.9 (clarifying that the *Sethi* test is to be used for determining the adequacy of a debtor's records and not for judging the credibility of his or her justification).  To meet his initial burden of proving that a debtor has not supplied the substantially complete and accurate records required by § 727(a)(3), a creditor may show either (1) the inadequacy of the provided records in accordance with *Sethi*, or (2) the impossibility of ascertaining "the debtor's present financial condition and the nature of any business transaction that occurred within a reasonable period prior to filing" from these tendered records. *In re Sethi*, 250 B.R. at 837–38.

The Court finds that there are material facts in dispute which preclude a finding as a matter of law that the Debtor failed to keep or preserve any recorded information from which his financial condition or business transactions might be ascertained.  Concerned largely with the Debtor's failures with respect to Diontech's record-keeping, the Plaintiffs have failed to state

13

with specificity what is lacking in the Debtor's personal financial disclosures.  By and large, the

Plaintiffs intertwine requests for the Debtor's personal financial records with documents

"concerning money he 'borrowed' or otherwise received from Diontech and from his myriad of

business 'ventures.'" (Pls' Reply Br., 13-08088-REG, ECF. No. 25 at 7.)

In May 2013, the Debtor turned over a box of over one thousand six hundred (1,600)

pages of documents. (Def's  Mem. of Law in Opp'n, 13-08088-REG, ECF. No. 23 at 23.)[5]

Plaintiffs claim that many of the documents in this turnover had already been obtained from

sources other than the Debtor.  Those that they received for the first time, they argue, were

incomplete and only created more questions. (Pls' Mot. for Leave to Amend the Compl. and

Summ. J., 13-08088-REG, ECF No. 17 at 12.)  The Debtor claims that the records produced are

sufficient for the Plaintiffs to ascertain the Debtor's financial condition and business

transactions.

In the way of personal financial records, the Debtor produced statements from two

Sovereign Bank accounts for 2009 through 2013.  The account ending in 4104 was in the name

of the Debtor and his spouse, Elizabeth Mihalatos. (Decl. of Michael Paul Bowen, Ex. 34, 13-

08088-REG, ECF No. 19-41.)  The account ending in 2118 was solely in the name of Elizabeth

---

[5]     The Debtor produced records previously obtained by the Plaintiffs from Diontech's prior counsel, King & King, consisting of two ledgers, one handwritten and the other computer generated, and bank statements. The remainder of this production consists of: (1) one and two-page print outs of Diontech general journal entries for various months in 2009 and related bank statements; (2) Hudson Valley Bank records for 31-72 AMA, LLC; (3) Signature Bank account statements for 2009 and 2010; (4) Signature Bank account statements for only some months of 2008 through 2009 for DM Mihalatos Associates, Inc.; (5) Bank statements for a Sovereign Bank account in the name of both Debtor and his spouse (account ending 4104), for only sporadic months during the 2009 and 2010; and, (6) Bank statements for a Sovereign Bank account in Debtor's spouse's name only (account ending 2118) (various statement from 2009 through January 2013). (Pls' EDNY Local Bankr. Rule 7056.1 Statement of Undisputed Material Facts, Exs. 30, 31, 32, 33, 34, and 35, 13-08088-REG, ECF. No. 18 ¶ 72.)

Mihalatos. (Decl. of Michael Paul Bowen, Ex. 35, 13-08088-REG, ECF No. 19-42.)  However, according to the Plaintiffs, at least one key monthly bank statement was excluded from the Debtor's production.  On December 28, 2010, Elizabeth Mihalatos wrote a check for $40,000 to Centex Builders from the account ending in 2118, these funds were deposited on January 12, 2011 into a Centex account ending in 7268, the same account being used to make payments to the Debtor and Elizabeth.  (Decl. of Michael Paul Bowen, Ex. 27, 13-08088-REG, ECF No. 19-34.)  The Sovereign Bank statement that would show this transaction was not included in the statements provided by the Defendant, though the records for the period before and after were produced.  The Court is not prepared, however, to find that the absence of this one bank statement dating two years prepetition is sufficient to satisfy the Plaintiffs' burden under § 727(a)(3).

Plaintiffs argues that they served the Debtor with a document discovery demand on November 4, 2013, requesting "[a]ll financial documents related to defendant and/or his spouse . . . including . . . all personal tax returns for defendant and all personal tax returns for defendant's spouse" and "[a]ll bank records related to or involving in any way debtor [or] his spouse." (Decl. of Michael Paul Bowen, Ex. 8, 13-08088-REG, ECF No. 19-12.).  Although the Debtor appears not to have responded to this request or provided any new documents, (Def's  Aff. and Counterstatement of Facts, 13-08088-REG, ECF. No. 22  ¶¶ 97–98), the Court is unable to ascertain what is still lacking and why those documents are necessary to ascertain the Debtor's financial condition or business transactions.  Based on the allegations contained in the Plaintiffs' papers most of what they seem to be requesting and have yet to receive relate to business entities that the Debtor was involved in pre-2011.

Considering this Court's finding that it will not give preclusive effect to the Veil Piercing Order on the issue of whether the Debtor is the alter ego of Diontech, the Court finds that it would be inappropriate to grant summary judgment with respect to § 727(a)(3) at this time. The Court is unable to find, as a matter of law, based on the undisputed facts, that the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information from which his financial condition or business transactions might be ascertained.

### b. Count 2—denial of the Debtor's discharge under § 727(a)(4)(A)

Section 727(a)(4)(A) provides: "The court shall grant the debtor a discharge, unless— (4) the debtor knowingly and fraudulently, in or in connection with the case— (A) made a false oath or account." Under this section, the party objecting to discharge must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Moreo*, 437 B.R. 40, 59 (E.D.N.Y. 2010). The overall burden of proof, including the burden of showing actual fraudulent intent, remains with the Plaintiff. *Id.* After the objecting party meets its burden by showing that the debtor made false statements, "the burden of production shifts to the debtor to produce a 'credible explanation.'" *Id.*

Fraudulent intent can be proven by either (1) evidence of a debtor's actual intent to deceive or (2) indicia of his reckless indifference to the truth. *Bub v. Rockstone Capital*, *LLC*, 516 B.R. 685, 694 (E.D.N.Y. 2014). Recognizing that fraudulent intent is rarely susceptible to direct proof, courts have crafted "badges of fraud" which may be used to establish the requisite

actual intent to defraud.[6]  *Bub v. Rockstone Capital*, *LLC*, 516 B.R. at 694 (citing *Salomon v. Kaiser* (*In re Kaiser*), 722 F.2d 1574, 1582 (2d Cir.1983)). "With respect to reckless indifference to the truth, the Second Circuit has recognized that fraudulent intent may be inferred from a series of incorrect statements and [omissions] contained in the schedules." *Bub*, 516 B.R. at 694.

**False Statements and Omissions**

The Court has narrowed down the arguments made in Plaintiffs' motion and has identified two allegedly false statements that the Debtor made in his petition, statement and schedules with respect to his assets and liabilities.[7]  First, the Plaintiffs allege that the Debtor's failure to identify his wife's Sovereign Bank account on his Schedule of Assets is alone sufficient to deny discharge under this section.  Records obtained from Centex indicate that the Debtor, in his own name, received payments from Centex in 2010 and 2011 and those payments were deposited into the Debtor's wife's Sovereign Bank account ending in 2118.  The Debtor addresses these payments by arguing that "any monies [his] wife received from Centex were received in 2010 and 2011, more than two years before the filing of the Defendant's petition." (Def's  Mem. of Law in Opp'n, 13-08088-REG, ECF. No. 23 at 26.)  If these deposits (his assets) were made into his wife's account more than two years prior to the bankruptcy filing, he argues, he did not have any duty to report his wife's bank account on his bankruptcy petition and schedules.  The Debtor filed for bankruptcy February 25, 2013, and thus any payments for his benefit deposited into his wife's bank account *after* February 25, 2011, would require the Debtor to disclose the bank account into which those deposits were made.

---

[6]    "'Badges of fraud' include secreting proceeds of a transfer, transferring property to family members, the lack or inadequacy of consideration, the general chronology of the events or transactions in question, and the concealment of relevant facts." *Bub v. Rockstone Capital*, *LLC*, 516 B.R. 685, 694 (E.D.N.Y. 2014).

[7]    The Plaintiffs also make claims related to Diontech tax returns which, for reasons previously stated, the Court will not address.

The Plaintiffs have in fact provided evidence that the Debtor's wife and the Debtor received at least five payments from Centex in the two year window prior to bankruptcy and all of these payments were deposited into the wife's Sovereign Bank account. (Decl. of Michael Paul Bowen, Ex. 27, 13-08088-REG, ECF No. 19-34.)  With regard to checks made out to him from Centex, the Debtor "states that these checks represent Defendant's salary for working at Centex and were deposited into the Sovereign account held in Defendant's wife's name to pay Defendant's family's ordinary living expenses." (Def's  Aff. and Counterstatement of Facts, 13-08088-REG, ECF. No. 22 ¶ 152.)  While this may be true, the law requires that the Debtor disclose such bank account.  The Court finds that the Plaintiffs have established that the Debtor made an omission under oath.  While the Court agrees that the Debtor improperly omitted his wife's Sovereign Bank account from his bankruptcy petition and schedules, the Court is unable to find on summary judgment that he did so with fraudulent intent.

Second, in response to question 18 on the Debtor's Statement of Financial Affairs, the Debtor did not list his role in AVN Enterprises.  Question 18 asks a debtor to list the companies for which he was an "officer, director, partner, or managing executive of a corporation . . . within the last six years."  The Debtor admits that he was a signator on the bank account owned by AVN, (Def's  Aff. and Counterstatement of Facts, 13-08088-REG, ECF. No. 22 at 4), but maintains that "Socrates [Antoniou] was the sole 100% owner of AVN." *Id*. ¶ 17.  The Court finds that the Debtor's ownership interest in and/or managerial role with respect to AVN is in dispute, and therefore cannot find on summary judgment that he improperly omitted AVN from his petition and schedules.

**Fraudulent Intent**

The burden of showing actual fraudulent intent lies with the party objecting to the debtor's discharge. *Pergament v. Smorto* (*In re Smorto*), No. 07–CV–2727 (JFB), 2008 WL 699502, at *4 (E.D.N.Y. Mar. 12, 2008).  While the Plaintiffs were able to show on the undisputed facts that the Debtor made at least one material omission in his bankruptcy filings, the Plaintiffs failed to provide sufficient undisputed facts for the Court to infer the Debtor's fraudulent intent.  Further, as the Debtor did provide extensive disclosures with respect to his business holdings and other assets, the Court is unable to make a finding that the Debtor exhibited a reckless indifference to providing true and accurate material information.  Because intent is difficult to establish on a summary judgment basis, courts rarely grant judgment on such claims. *In re Bottone*, 209 B.R. 257, 264 (Bankr. D. Mass. 1997).  In this case, the record regarding the Debtor's intent is insufficient for this Court to grant summary judgment to the Plaintiffs on their § 727(a)(4)(A) claim.

### c.   Count 3—denial of the Debtor's discharge under § 727(a)(5)

Section 727(a)(5) provides the basis to deny a discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). The purpose of this section is to deter and punish debtors from "abus[ing] the bankruptcy process by obfuscating the true nature of their affairs, and then refusing to provide a credible explanation." *Nof v. Gannon* (*In re Gannon*), 173 B.R. 313, 317 (Bankr. S.D.N.Y. 1994).  Like § 727(a)(3), this paragraph contains no intent requirement and creates a two-part burden-shifting analysis.  *In re Cacioli*, 463 F.3d at 238. First, the Plaintiff must show a loss or deficiency of assets.  *Id.* Once the creditor makes this showing, the debtor must explain the whereabouts of the assets. *Id.*

19

### i.    Missing Assets: Plaintiffs' Burden under §727(a)(5)

To carry the initial evidentiary burden under § 727(a)(5), a plaintiff must establish that: (1) the debtor at one time possessed or claimed to control substantial and identifiable assets; (2) those assets have disappeared, their disposition or placement now unknown; and (3) no plausible explanation for this deficiency is apparent from the submitted records or has been articulated by the debtor. *See, e.g.*, *Adams v. Inzero* (*In re Inzero*), 426 B.R. 428, 432 (Bankr. D. Conn. 2009) (citing *In re Cacioli*, 463 F.3d at 238); *Jiminez v. Rodriguez* (*In re Rodriguez*), No. 05–19599, 2008 WL 3200215, at *2–3 (Bankr. S.D.N.Y. 2008) (quoting 6 COLLIER ON BANKRUPTCY ¶ 727.08 (15th ed. rev.1995)).

The bulk of the Plaintiffs' arguments in support of their §727(a)(5) claims relate to the loss of substantial Diontech assets, which the Court will not address at this stage in the proceedings, for reasons already explained.  With respect to the loss or deficiency of assets by the Debtor personally, the Plaintiffs allege that there were substantial "loans to shareholders" booked by Diontech which are unaccounted for by the Debtor and his partners.  The Diontech books and records submitted in support of the summary judgment motion show that the Debtor received over $140,000 from Diontech during 2007 and 2008, and that a total of over $1 million was booked as "loans to shareholders" cumulating at the end of 2008.

### ii.    Satisfactory Explanation: Debtor's Burden under §727(a)(5)

Once the plaintiff has satisfied its initial burden, the debtor must supply a "satisfactory" explanation for the failure to account for the missing assets. *Sonders v. Mezvinsky* (*In re Mezvinsky*), 265 B.R. 681, 689 (Bankr. E.D. Pa. 2001).  On this question of fact, "the standard is one of reasonableness and credibility." *Minsky v. Silverstein* (*In re Silverstein*), 151 B.R. 657,

663 (Bankr. E.D.N.Y. 1993).  To be satisfactory, a debtor's explanation must only "convince the bankruptcy judge that a debtor has not hidden or improperly shielded assets." *First Am. Bank v. Bodenstein* (*In re Bodenstein*), 168 B.R. 23, 29–30 (Bankr. E.D.N.Y. 1994); *accord Pereira v. Young* (*In re Young*), 346 B.R. 597, 618 (Bankr. E.D.N.Y. 2006).  The Court is not looking for a particularly praiseworthy explanation here; the debtor just has to indicate "where the assets were spent." *In re Palermo*, 370 B.R. 599, 613 (Bankr. S.D.N.Y. 2007).

Although there is no evidence that the Debtor personally received $1 million from Diontech, and the Court could not make such a finding on summary judgment despite the Diontech ledgers, the Debtor endeavored, in an affidavit dated May 1, 2014, to explain what happened to the $1 million booked as "loans to shareholders."  He explains, in sum, that: approximately $250,000 was used by him to purchase real property in Harlem; approximately $193,000 was used to purchase 24-65 46th Street, which was owned by 24-65 AMA, LLC, of which he was a 1/3 owner; some of the money was used to repay a commercial loan owed by Diontech ($21,500), and to make monthly lease payments for Diontech office space (approximately $10,500), and to pay down a corporate credit line ($35,000); miscellaneous payments were made for a business flight, to pay a subcontractor, and investments by Diontech in a company called New York Fashion. (Def's Aff. Regarding Loans to Shareholders, 13-08088-REG, ECF. No. 27.) There were also mortgage payments made on a house owned jointly by the Debtor, his mother and his sister, and other explanations for miscellaneous transfers booked as loans to shareholders. *Id.*  The Debtor explains that the entries that are characterized specifically as "loans" to him are all actually salary payments and any further question about why these were booked as loans as opposed to salary should be directed toward Kyriacos Skevas,

Diontech's accountant in 2008. *Id.* ¶ 12.  He maintains that these salary payments were spent on ordinary living expenses.  *Id.*

Although the apparent mischaracterization of these "loans to shareholders" on the Diontech ledgers may create problems in another context, it does not provide a basis to deny the discharge as a matter of law.  *In re Devaul*, 318 B.R. 824, 840 (Bankr. N.D. Ohio 2004) (finding that even though debtor did not offer any specific documentation to account for money loaned to him three years prior to filing, testimony regarding how he spent the funds was enough to show that the "funds [had] not been secreted away and no longer exist for distribution to creditors"). The Court finds that the Debtor's explanation as to the use of those funds booked as "loans to shareholders," totaling approximately $1 million, while not particularly "praiseworthy" is at least an explanation and is sufficient to defeat this motion for summary judgment.

Summary judgment on the Plaintiffs' § 727(a)(5) claim will be denied.

## Conclusion

Based on all of the foregoing, the Plaintiffs' motion for summary judgment is denied as to Count One (§ 727(a)(3)), Count Two  (§ 727(a)(4)(A)), and Count Three (§ 727(a)(5)).  The Court shall enter an order consistent with this Memorandum Decision and schedule a further pretrial conference to move this matter towards trial.

Dated: Central Islip, New York
      March 3, 2015                  ***/s/ Robert E. Grossman***
                                           Hon. Robert E. Grossman, U.S.B.J.

22